Charles Franklin MURDOCH, Junior, Petitioner–Appellant,

v.

Roy A. CASTRO, Warden; Attorney General of the State of California, Respondents–Appellees.

No. 02–55650.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 2004.

Filed April 5, 2004.

Seymour I. Amster, Law Offices of Seymour· I. Amster, Van Nuys, CA, for the petitioner-appellant.

Rama R. Maline, Deputy Attorney General, Los Angeles, CA, for the respondents-appellees.

Before: FRIEDMAN *, TROTT, and RAWLINSON, Circuit Judges.

TROTT, Circuit Judge:

. Petitioner Charles Murdoch appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Murdoch challenges the district court's decision that the California trial court's attorney-client privilege ruling, which barred him from seeing or using a purportedly

---

* Hon. Daniel M. Friedman, Senior U.S. Circuit · Judge for the Federal Circuit, sitting by desig-

exculpatory letter written by a government witness to the witness's lawyer, did not deprive him of his constitutional right to cross-examination guaranteed by the Sixth Amendment's Confrontation Clause.

We have jurisdiction pursuant to 28 U.S.C. § 2253. We vacate the order of the district court denying Murdoch's petition, and ·remand the case for further proceedings consistent with this opinion.

## I

### Standard of Review

We review the district court's denial of Murdoch's § 2254 habeas petition de novo. *Bribiesca v. Galaza,* 215 F.3d 1015, 1018 (9th ·Cir.2000). . Under the Antiterrorism and Effective Death Penalty Act (AEDPA), § 2254 petitions "shall not be ·granted with respect to any claim that was adjudicated on the merits in . State court proceedings unless the adjudication of the claim—(1) resulted in a. decision that was *contrary to, or involved ·an .unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination of the facts* in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2) (emphasis added). Evidentiary hearings can be conducted in federal habeas proceedings if "the claim relies on ... a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii).

## II

### Background

· Petitioner Charles Murdoch is currently serving a life sentence without possibility

nation.

of parole in the California penal system for convictions of first degree murder and attempted murder. The convictions are based upon a murder which occurred in 1983 while four people were committing a robbery in the Horseshoe Bar in Long Beach, California. One bystander was shot and killed; another was stabbed and wounded. After an initially fruitless investigation, the case was designated an unsolved crime. The investigation remained dormant until 1994, when the Long Beach Police Department had acquired the necessary technology to access a previously inaccessible central fingerprint database and ran the prints on file in this case. That led to the identification of Dino Dinardo as one of the robbers. The Horseshoe's bartender, Dyanne Spence, then tentatively identified Dinardo, and he was arrested in June 1994.

When first questioned by a police detective, Dinardo denied any involvement in the incident. Under pressure from the police, however, he then recanted, admitted to his involvement in the robbery, and identified Charles Murdoch, the petitioner, as one of his accomplices. The District Attorney eventually charged both Dinardo and Murdoch with murder accompanied by special circumstances, crimes carrying possible sentences of life imprisonment without parole.

Dinardo was tried by himself and convicted by a jury of first-degree murder and sentenced to twenty-five years to life. At Dinardo's sentencing, however, the sentencing judge suggested that his sentence might be subsequently reduced if he cooperated and testified against Murdoch. Dinardo took the hint and agreed to testify against Murdoch in return for a reduction of his conviction to voluntary manslaughter with a sentence of twelve years.

At Murdoch's trial, Dinardo testified that on the day of the robbery, Murdoch came by his house with an unidentified Mexican–American man Dinardo did not know and asked if Dinardo wanted to make some money by doing "a job," which he understood to mean committing a hold-up. Dinardo was to grab the money out of the till while the others, who would be armed with a gun and a knife, kept watch. Another unidentified Mexican–American man was driving the car they rode in to the bar. Murdoch entered the bar armed with a .22 caliber rifle and announced the robbery. Dinardo jumped across the bar and took two hundred dollars out of the register, at which time he heard a shot. He left through the back door and they all divided the money. Dinardo testified that he did not know anyone was hurt until he was questioned by the investigators in 1994.

In addition to Dinardo, witnesses from the bar also testified, including bartender Spence. After Murdoch's arrest in 1994, Spence identified him in a line-up, but she and others had been unable positively to identify Murdoch in photo arrays eleven years earlier, on the heels of the robbery. The record strongly suggests that without Dinardo's accomplice testimony, the prosecution's case against Murdoch was weak.

Murdoch used Dinardo's reduced sentence and lesser conviction to impeach him, but here's the rub. Prior to opening statements, the prosecutor informed the trial court and defense counsel she had discovered the existence of a letter, apparently written by Dinardo to his attorney, in which Dinardo allegedly exonerated Murdoch and claimed that his own statements to the contrary had been coerced by the police. The prosecutor claimed never to have possessed or actually seen the letter. She knew of its existence only through an interview with Dinardo. The letter, it turned out, was in the possession of Dinardo's attorney, who asserted on Dinardo's

behalf that it was protected by the attorney-client privilege. The trial court took possession of the letter without allowing Murdoch's counsel or the prosecutor to see it and ruled after reading it that Dinardo was entitled to the privilege. The court did so without mention of the constitutional guarantee now at issue. After so ruling, the court returned the letter to Dinardo's attorney and ordered that he safekeep it in case of appeal.

On direct appeal, and in his petitions for state post conviction and federal habeas relief, Murdoch raised, *inter alia*, his claim that the trial court's failure to allow him to see or use the privileged letter violated his right to confrontation. The California Court of Appeal denied relief, and the California Supreme Court declined his petition for review. Petitioner's federal habeas petition was denied by the district court. This circuit granted a Certificate of Appealability limited to the issue of "whether appellant's federal constitutional rights were violated when the trial court ruled that prosecution witness Dinardo's letter was protected by attorney-client privilege."

### III

### Discussion

The Sixth Amendment guarantees Murdoch the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he right of confrontation 'contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails.'" *Coy v. Iowa*, 487 U.S. 1012, 1018–19, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (quoting *Lee v. Illinois*, 476 U.S. 530, 540, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)). "The *central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous test-*

*ing* in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (emphasis added). "Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.'" *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (holding that when a prosecution witness invoked the Fifth Amendment privilege, he "could not be cross-examined on a statement imputed to but not admitted by him," and thus defendant's Confrontation Clause rights were violated by the prosecution's exposure of the statement to the jury)).

One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information "revealing ... ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand," motives that cast doubt on the honesty of the witness's testimony. *Davis*, 415 U.S. at 316, 94 S.Ct. 1105. Today, we address a situation where a substantial showing has been made that, depending upon the content of Dinardo's letter, the Confrontation Clause and attorney-client privilege are potentially at odds—a set of facts the Supreme Court has not yet examined. Its precedents, however, clearly provide that evidentiary privileges or other state laws must yield if necessary to ensure the level of cross-examination demanded by the Sixth Amendment. *See Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (holding that the Kentucky court's "[s]peculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of[the

government witness's] testimony"); *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that trial court's complete prohibition of all inquiry into potential bias resulting from dismissal of government witness's pending public drunkenness charge violated the Confrontation Clause); *Davis*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347(holding that state's policy of keeping juvenile records confidential "is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness"); *Douglas*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934.[1]

At least two circuits have acknowledged and applied this precept in the context of the attorney-client privilege. *United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir.1994) ("Even the attorney client privilege ... hallowed as it is, yet not found in the Constitution, might have to yield in a particular case if the right of confrontation ... would be violated by enforcing the privilege."); *Mills v. Singletary*, 161 F.3d 1273 (11th Cir.1998); *United States ex rel. Blackwell v. Franzen*, 688 F.2d 496, 501 (7th Cir.1982) ("The court must ultimately decide whether the probative value of the [excluded] alleged privileged communica-

tion was such that the defendant's right to effective cross examination was substantially diminished."). The facts in those cases, however, did not warrant yielding the privilege to accommodate the Sixth Amendment. *Mills*, 161 F.3d at 1288 (holding that defendant could effectively cross-examine the witness without attorney-client privileged materials because they were cumulative of other inconsistent statements); *Rainone*, 32 F.3d at 1206–07 (holding that when defense counsel "spent three days cross-examining [the witness] and brought out among other things that he had committed perjury on a number of occasions, had bribed politicians and police officers, had engaged in extortion and loansharking, and had committed six murders," the notes he wrote to his counsel were not necessary for effective cross-examination); *Blackwell*, 688 F.2d at 501 (7th Cir.1982) (holding that the federal habeas court would uphold, in a close case, the state courts' decision that defendant's right to cross-examine was not violated because the courts "balanced the interests served by the attorney-client privilege against what they determined to be the [low] probative value of the offered testimony").[2]

**1.** Murdoch spends a good portion of his brief addressing the merits of the privilege ruling under California law, an issue that is not before us. "We are not a state supreme court of errors; we do not review questions of state evidence law. On federal habeas we may only consider whether the petitioner's conviction violated constitutional norms." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (citations omitted). Thus, we do not address the merits of the privilege claim, but only its impact on Murdoch's constitutional rights vis à vis the Confrontation Clause.

**2.** We note that, Confrontation Clause aside, attorney-client privilege does not extend to perpetrating a fraud against the court. *See Nix v. Whiteside*, 475 U.S. 157, 167–68, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (citing to the

Model Rules and Model Code of Professional Responsibility for the proposition that attorneys can not assist clients in presenting perjurious testimony or false evidence); Model Rules of Professional Conduct R. 1.2(d)("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent."); Model Rules of Professional Conduct R. 1.6(b)(2), (3) (allowing lawyers to reveal confidential information to prevent the client from committing a fraud or crime using the lawyer's service that is reasonably certain to result in substantial financial injury); *see also*, Cal. Evid.Code § 956 ("There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or fraud."); Rules of Prof. Conduct of the State Bar of Cal.

Generally, the Confrontation Clause requires that a defendant be given an opportunity for effective cross-examination. *Olden,* 488 U.S. at 231, 109 S.Ct. 480. Effective cross-examination is of paramount importance when, as here, the governments's case depends heavily (or entirely) upon the testimony of informants or accomplices. As the Supreme Court recently said, "This Court has long recognized the 'serious questions of credibility' informers pose.... We have therefore allowed defendants 'broad latitude to probe [informants'] credibility by cross examination' and have counseled submission of the credibility issue to the jury 'with careful instructions.'" *Banks v. Dretke,* 157 L.Ed.2d 1166, 124 S.Ct. 1256, No. 02–8286, slip op. at 29–30 (U.S. Feb. 24, 2004) (citations omitted) (alterations in original); *see also Burr v. Sullivan,* 618 F.2d 583, 587 (9th Cir.1980) ("We have repeatedly held that when the Government's case turns on the credibility of a witness, then defense counsel ... must be given a maximum opportunity to test the credibility of the witness." (internal quotation marks, alteration, and citation omitted)). "[W]ide latitude in cross-examination is especially appropriate when the key witness is an accomplice of the accused," such as Dinardo. *Id.* at 587 (citations omitted). Not only should defense counsel be allowed wide latitude in questioning, but also when, "[o]ut of necessity, the government ... relies on witnesses who have themselves engaged in criminal activity and whose record for truthfulness is far from exemplary ... [f]ull disclosure of all relevant information concerning their past record and activities through cross-examination and otherwise is indisputably in the interests of justice." *United States v. Brooke,* 4 F.3d 1480, 1489 (9th Cir.1993); *See Commonwealth of N. Mariana Islands v. Bowie,* 243 F.3d 1109, 1124 (9th Cir.2001) ("[E]ach contract for testimony [from an accomplice] is fraught with the real peril that the proffered testimony will not be truthful, but simply factually contrived to 'get' a target of sufficient interest to induce concessions from the government."). The attorney-client privilege should not be an unequivocal bar to access to the only evidence of inconsistent statements and ulterior motives made by accomplices turned government witnesses.[3]

R. 5–200(A)("In presenting a matter to a tribunal, [an attorney] ... [s]hall employ ... such means only as are consistent with truth.").

Additionally, as the Eleventh Circuit recently recognized, invocation of the attorney-client privilege to bar "the introduction of crucial evidence that would [] significantly undermine[] the credibility of [] the Government's key witnesses" can be especially unfair to defendants whose accomplices turn state's evidence. *United States v. Almeida,* 341 F.3d 1318, 1326 (11th Cir.2003) (holding that "when each party to a joint defense agreement is represented by his own attorney, and when communications by one co-defendant are made to the attorneys of other co-defendants, such communications do not get the benefit of the attorney-client privilege in the event that the co-defendant decides to testify on behalf of the government in exchange for a reduced sentence").

3. An issue raised by the facts but not by the petitioner is whether a prosecutor faced with the possibility of questionable testimony would be well advised to pursue waiver of the privilege by a cooperating government witness. *Cf. Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (extending Brady rule to impeachment evidence); *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (A "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *Banks,* 157 L.Ed.2d 1166, 124 S.Ct. 1256, No. 02–8286, slip op. at 23–24

■ "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Olden,* 488 U.S. at 231, 109 S.Ct. 480 (quoting *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431(quoting *Davis,* 415 U.S. at 318, 94 S.Ct. 1105)).

If the purported contents of Dinardo's privileged letter are as generally described by the prosecutor and as Murdoch believes, then, as in *Van Arsdall,* Murdoch has arguably met his burden: "[a] reasonable jury might have received a significantly different impression of [Dinardo's] credibility had [Murdoch's] counsel been permitted to pursue his proposed line of cross-examination." 475 U.S. at 680, 106 S.Ct. 1431. Other than Dinardo's predictable denial when arrested for his involvement in the crime, the privileged letter is the only evidence of prior (purportedly) inconsistent statements by Dinardo regarding Murdoch's involvement in the robbery and murder. General impeachment for bias based on his plea bargain questioned Dinardo's reliability and trustworthiness in a much different (and lesser) way than would actual statements inconsistent with what he was then saying on the stand. Thus, Murdoch's ability to fully cross-examine Dinardo was severely limited by the privilege ruling.

Under the AEDPA, federal courts will usually not disturb the findings and conclusions of a state court on federal constitutional issues in state post-conviction proceedings. 28 U.S.C. § 2254(d), (e). Here, however, we do so because the petitioner was unable adequately to develop the factual predicate for his claim in state court. *See* 28 U.S.C. § 2254(e)(2)(A)(ii); *cf. Killian v. Poole,* 282 F.3d 1204, 1208 (9th Cir.2002), *cert. denied,* 537 U.S. 1179, 123 S.Ct. 992, 154 L.Ed.2d 927 (2003), ("Having refused [petitioner] an evidentiary hearing on the matter, the state cannot argue now that the normal AEDPA deference is owed the factual determinations of [its] courts." (citations omitted)).

■ During trial and later in the state habeas proceedings, Murdoch tried to make the letter a part of the record. The trial court observed the letter in camera, but then refused Murdoch's request that a sealed copy of the letter be made part of the record and simply let Dinardo's counsel safekeep it, all on the ground that the content of the letter was privileged. The California Court of Appeal denied Murdoch's motion to have the letter unsealed, and nothing in the record indicates that the letter was examined by that court. The court makes no indication in its opinion that the letter was examined and the privilege then weighed in light of Murdoch's right to effective cross examination. In federal habeas court, Murdoch moved the court to permit discovery of the letter, again to no avail. Thus, despite petitioner's

(U.S. Feb. 24, 2004) ("A rule ... declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."); *Bowie,* 243 F.3d at 1117 (holding that the prosecutor's failure to provide a letter that "would alert anyone ... to the strong possibility that the witnesses in this case had agreed to testify falsely against Bowie" was a due process violation); *See also,* Model Rules of Professional Conduct R. 3.8(a) (including among the Special Responsibilities of a Prosecutor: "The prosecutor in a criminal case shall ... make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense.").

We leave resolution of this issue to another day.

diligence, the letter was never made a part of the record.

Without knowing the contents of the letter, or seeing any evidence that the contents were examined by the state courts during Murdoch's post-conviction relief proceedings, the federal courts are not able to determine whether or not the California Court of Appeal's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Similarly, without the letter, we are unable to determine in the first instance whether, in this case, the attorney-client privilege "must fall before the right of petitioner to seek out the truth in the process of defending himself." *Davis*, 415 U.S. at 320, 94 S.Ct. 1105. We will not "require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness," where neither the state nor federal courts actually reviewed the privileged material on habeas and made a decision as to its relevant probative value. *Id.*

We now vacate the district court's denial of Murdoch's § 2254 petition, and remand this case to the district court. We instruct the district court to use its process to obtain the letter. Once the letter is obtained, the district court shall then determine in camera and as the court deems appropriate whether, as applied to the totality of facts in this case, the denial of access to Dinardo's letter resulted in an unconstitutional denial of Murdoch's Sixth Amendment right to confront witnesses.

**VACATED and REMANDED.**