*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0641**

State of Minnesota,
Respondent,

vs.

Mohamed Adel Alwan,
Appellant.

**Filed February 13, 2017
Affirmed
Jesson, Judge**

Hennepin County District Court
File No. 27-CR-14-34073

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Murad M. Mohammad, Minneapolis, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Ross, Judge; and Schellhas,

Judge.

## U N P U B L I S H E D   O P I N I O N

**JESSON**, Judge

Appellant Mohamed Adel Alwan challenges his conviction of attempted second-

degree intentional murder. He argues that the district court (1) plainly erred by admitting

the victim's prior statements to a detective; (2) violated his confrontation right by limiting

his cross-examination of an inmate incarcerated with him; and (3) deprived him of the full number of peremptory challenges by failing to remove an alternate juror until after trial commenced. Because the district court acted within its discretion, and no plain error occurred, we affirm.

**FACTS**

One evening in November 2014, R.G. was hosting a large party at a room he had rented at the Residence Inn in Bloomington. A fight broke out, and R.G. asked some people to leave. A short time later, one man came back and knocked on the door of the room. When R.G. opened the door, the man shot him twice, grazing his hip and hitting his forearm. The shooter then fled, and police were called. Alwan was ultimately found, arrested, and charged with attempted second-degree intentional murder. *See* Minn. Stat. § 609.19, subd. 1(1) (2014).

At Alwan's jury trial, Officer Nicholas Sassor, who responded on the night of the shooting, testified that R.G. identified the shooter as a light-skinned Somali male, about five feet ten inches tall, with an Afro. Police took R.G. to the hospital, where he also gave a statement to Detective Jerome Robertson. Two days later, while still in the hospital, R.G. met again with Robertson and Officer Kerri Nolden and was shown a sequential photo lineup. Nolden testified that when asked to identify the shooter, R.G. initially vacillated between two photographs, but ultimately picked out Alwan's photograph. When asked if there was anyone who stood out in particular, he mentioned that the suspect had a cracked or broken tooth.

2

At trial, R.G. testified that he described the shooter to police as a Somali male with long hair and light skin, but that he was taking a lot of pain medication at the time. He could not remember telling police anything about the shooter's smile or his teeth. When shown a copy of the photo lineup, he agreed that he had selected a photograph and stated that the person in the photograph "looked familiar" from similar friendship circles. But he testified that the person who shot him was not Alwan, whom he knew as "Moe," and that he never told police that Alwan shot him. He testified that he did not tell anyone that Alwan was not the shooter until trial because nobody came to talk to him about it, and he was in custody and then "on the run" because of outstanding warrants.

An employee of the Residence Inn testified that on the evening of the shooting, he saw a light-skinned black male with a distinctive hairstyle, half in an Afro and half in braids, run down the stairs and out the back door. Photographs from a surveillance video showed a person matching that description leave the hotel about 4:40 a.m. and return about an hour later. The employee identified Alwan as the person in the photographs and the video, which was played for the jury.

One woman who attended the party testified that she remembered seeing Alwan there, but that she did not unequivocally identify him as the shooter from the surveillance-video photographs. Another woman at the party testified that she recalled a light-skinned Somali male with his hair half in braids and half in an Afro, but she did not identify that person as Alwan.

L.G., an inmate who was incarcerated with Alwan, testified that Alwan told him in jail that he was an active member of the Crips gang and that he was a "shooter." According

3

to L.G., Alwan said that he had "cracked on," meaning that he had shot, someone at the Residence Inn, and that he "could have had that bitch." According to L.G., Alwan indicated that the victim was going to retract his statement because Alwan was sending someone to talk to him.

After R.G. testified and Nolden testified about the photo identification, the state moved to introduce R.G.'s two statements to Robertson, one made shortly after the shooting and one made two days later, regarding the photo identification. Defense counsel challenged the motion as untimely because it was made after the district court's initial deadline for filing motions in limine, but asserted no other objection. The prosecutor responded that adequate notice had been given and that, following R.G.'s testimony, admission of the statements had become necessary for the state's case. The district court granted the motion, ruling that the statements met the criteria for admission under the residual hearsay exception, Minnesota Rule of Evidence 807, and that they were also prior consistent statements under Minnesota Rule of Evidence 801(d)(1)(B).[1]

Robertson then testified that in R.G.'s first statement shortly after the shooting, he identified the shooter as a light-skinned Somali male about five feet ten inches tall, with his hair in an "Afroish style," and something strange about his tooth, such as a chip. Robertson learned that Alwan went by the nickname "Illeg," which meant something about

---

[1] The statements would generally be inadmissible as hearsay because they are out-of-court statements offered to prove the truth of the matter asserted. *See* Minn. R. Evid. 801(c) (defining hearsay); Minn. R. Evid. 802 (barring admission of hearsay, except as provided by rules of evidence).

4

a tooth, and he personally observed that Alwan had a chipped tooth. Robertson also testified that in his second statement, when R.G. identified Alwan in the photo lineup, he mentioned the name, "Illeg."

The jury convicted Alwan, and the district court sentenced him to 153 months in prison. This appeal follows.

## DECISION

### I. *R.G.'s prior statements to Detective Robertson were properly admitted under the residual hearsay exception.*

Alwan challenges the district court's admission of R.G.'s two statements to Robertson on the basis that they did not qualify as prior consistent statements under rule 801(d)(1)(B) and did not meet the criteria for admission under rule 807, the residual hearsay exception. This court generally reviews the district court's objected-to evidentiary rulings for an abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). But here, defense counsel did not challenge the statements as hearsay at trial. Rather, he objected only on the basis that the state did not provide timely notice of its motion to introduce the statements, a ground which he has not reasserted on appeal. "A party may not obtain review by raising the same issue under a different theory." *State v. Carroll*, 639 N.W.2d 623, 629 n.3 (Minn. App. 2002), *review denied* (Minn. May 15, 2002).

Nonetheless, even though the defense has raised a different objection to the statements on appeal, this court may review the district court's evidentiary ruling for plain error. *See* Minn. R. Crim. P. 31.02. Reversal under the plain-error standard requires an error that was plain and that affected the defendant's substantial rights. *State v. Hull*, 788

5

N.W.2d 91, 100 (Minn. 2010). An error is plain when a district court's ruling contravenes caselaw, a rule, or a standard of conduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Generally, an error affects substantial rights if it "was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). Stated another way, substantial rights are affected when a reasonable likelihood exists that the error had a significant effect on the jury's verdict. *State v. Finch*, 865 N.W.2d 696, 703 (Minn. 2015).

The district court found that R.G.'s statements to Robertson fell within the residual hearsay exception, Minnesota Rule of Evidence 807. Under that exception, a statement may be admitted if (1) it has "equivalent circumstantial guarantees of trustworthiness" to statements covered by enumerated hearsay exceptions; (2) it is offered as evidence of a material fact; (3) it is more probative on the issue "for which it is offered than other evidence which its proponent can procure through reasonable efforts"; and (4) admitting the statement will best serve the general purposes of the evidentiary rules and the interests of justice. Minn. R. Evid. 807; *see State v. Ahmed*, 782 N.W.2d 253, 259 (Minn. App. 2010).

In determining whether a statement has circumstantial guarantees of trustworthiness, a court examines the totality of the circumstances, using several factors. *State v. Martinez*, 725 N.W.2d 733, 737-38 (Minn. 2007). Under this approach, we consider: (1) whether the declarant testified and was available for cross-examination; (2) whether a dispute exists as to whether the declarant made the statement or concerning its contents; (3) whether the declarant made multiple consistent versions of the statement; (4) whether the statement is against the declarant's penal or relationship interest;

(5) whether other evidence corroborates the statement; and (6) whether other evidence discredits the recanted version. *See Martinez*, 725 N.W.2d at 737 (citing *State v. Ortlepp*, 363 N.W.2d 39, 44 (Minn. 1985)); *State v. Robinson*, 718 N.W.2d 400, 410 (Minn. 2006); *State v. Plantin*, 682 N.W.2d 653, 659 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004).

Alwan argues that R.G.'s statements to Robertson lack circumstantial guarantees of trustworthiness, so that the district court committed plain error by admitting them. We disagree and conclude that the statements had sufficient circumstantial guarantees of trustworthiness to support their admission under rule 807. R.G. testified and was cross-examined. There is no dispute that he made the statements while in the hospital. Other evidence corroborates R.G.'s statements of identification, including his statement to Officer Sassor at the scene, the hotel surveillance video, and Alwan's admissions to L.G. in jail.

Alwan further contends that R.G. was on medication when he gave the statements. He also maintains that the reliability of R.G.'s statement on the lineup identification is questionable because Robertson acknowledged that R.G. asked for more proof, and Nolden admitted that the skin tone on the photos may be off. But Robertson testified that the reference to R.G. being medicated referred to his first statement, and that on the day of the second statement, when R.G. identified Alwan as "Illeg," he was alert and oriented as to time and place. And R.G.'s statement identifying Alwan in the photo lineup was consistent with his previous statements of identification. In addition, a statement is considered against a declarant's interest if the declarant is hostile to the prosecution and supportive of the

defendant. *State v. Tate*, 682 N.W.2d 169, 176-77 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). Here, R.G., who did not wish to be shown a copy of his statement to refresh his memory when he testified, appeared to be supportive of the defense. Therefore, his statement is considered against his penal interest. Finally, as the state points out, the reliability of R.G.'s hospital statements is increased by their timing because they occurred within a few days after the offense, as contrasted with his identification testimony at trial nearly a year later. In sum, R.G.'s statements contained the requisite circumstantial guarantees of trustworthiness, and the district court did not plainly err by admitting them.[2]

## II. The district court did not violate Alwan's confrontation rights.

Generally, district courts have broad discretion to control the scope of cross-examination. *State v. Greer*, 635 N.W.2d 82, 89 (Minn. 2001). Nonetheless, the accused's right to confront the witnesses against him under the Sixth Amendment to the United States Constitution limits the district court's discretionary authority to control the scope of cross-examination. U.S. Const. Amend. VI; *State v. Lanz-Terry*, 535 N.W.2d 635, 640 (Minn. 1995). Alwan asserts that Confrontation Clause violations occurred because he was denied the opportunity for thorough cross-examination of L.G. that could lead to exposing bias on the part of L.G. He argues that the district court violated his Confrontation Clause right by sustaining the state's objections on the basis of attorney-client privilege to two questions the defense asked of L.G. on cross-examination. He also maintains that the district court

_____

[2] Because we have concluded that the statements were properly admitted under rule 807, we do not address Alwan's additional argument relating to their admission as prior consistent statements under rule 801(d)(1)(B).

8

improperly sustained an objection on the basis of relevance to the defense question of whether L.G. told Alwan that L.G. had shot a person. Because Alwan did not raise these claims before the district court, we review the district court's rulings for plain error. *See Griller*, 583 N.W.2d at 740.

### *Attorney-client privilege*

On cross examination, L.G. testified that he was in custody and that his lawyer, who was in the courtroom with him, had reported the jail conversation with Alwan to the prosecutor's office, hopefully to get a benefit for L.G. Defense counsel then asked whether L.G. had spoken to his attorney in detail about "what kind of deal [he] will get if [he] testif[ies]." The district court sustained the prosecutor's objection on the basis of attorney-client privilege. Then, after L.G. testified that he still had an active case, defense counsel asked L.G., "That's why your lawyer's here, right?" The district court also sustained the prosecutor's objection to this question on the same basis.

Alwan argues that a Confrontation Clause violation occurred when the district court sustained the prosecutor's objections based on attorney-client privilege. First, he maintains that the prosecutor lacked standing to assert this objection on behalf of L.G. Although the government ordinarily lacks standing to assert the attorney-client privilege for a witness, the Eighth Circuit Court of Appeals has held that any such error was harmless when the defense had ample opportunity to discredit the witness's testimony. *United States v. Ortega*, 150 F.3d 937, 942 (8th Cir. 1998). Similarly, here, any error in the state's asserting attorney-client privilege on behalf of L.G. was harmless because the defense elicited L.G.'s testimony that he hoped to obtain a benefit for himself by reporting the conversations and

9

that his attorney had contacted "whoever they felt necessary to contact" to report his conversations with Alwan.

Alwan also argues that his Sixth Amendment right to confrontation trumps the attorney-client privilege. Federal caselaw has recognized that the attorney-client privilege must, if necessary, yield "to ensure the level of cross-examination demanded by the Sixth Amendment." *Murdoch v. Castro*, 365 F.3d 699, 702 (9th Cir. 2004); *cf. State v. Evans*, 756 N.W.2d 854, 872 (Minn. 2008) (acknowledging that privileges must give way to a defendant's right to confrontation in narrow circumstances). But courts acknowledging this precept have not held, in the fact situations presented, that a defendant's Sixth Amendment rights were violated by assertion of the attorney-client privilege. *Murdoch*, 365 F.3d at 702; *see, e.g.*, *United States v. Rainone*, 32 F.3d 1203, 1206-07 (7th Cir. 1994) (holding that when defense attorney extensively cross-examined a witness and elicited information that he had committed perjury and other crimes, notes written to his attorney were not necessary for effective cross-examination); *Mills v. Singletary*, 161 F.3d 1273, 1288-89 (11th Cir. 1998) (holding that, when court allowed witness to invoke attorney-client privilege regarding prior inconsistent statements made to defense investigator, no Confrontation Clause violation occurred when cross-examination already exposed prior inconsistent statements); *United States v. Franzen*, 688 F.2d 496, 500-01 (7th Cir. 1982) (rejecting argument that Confrontation Clause was violated when attorney-client privilege was invoked, because defense counsel had wide latitude on cross-examination and was able to make a record from which to argue that witness's confession was unreliable). Here, L.G. was thoroughly cross-examined by the defense, and the information sought by defense

10

counsel would have had low probative value in assisting the jury to assess L.G.'s reliability as a witness. We cannot conclude that under these facts, Alwan's Sixth Amendment confrontation rights take precedence over the assertion of L.G.'s attorney-client privilege.

### *Relevancy objection*

When cross-examining L.G., defense counsel asked him, "Did you tell [Alwan] you shot somebody?" The prosecutor objected on the grounds of relevancy, and the district court sustained the objection. Alwan argues that the denial of the opportunity to question L.G. on this issue violated his Confrontation Clause right because his answer to that question would have exposed L.G.'s background as a criminal and showed that he committed a serious felony, for which he may have expected a favor from the state. But the jury already had that information because L.G. had testified that he was in custody and that he was hoping for consideration from the state.

Cross-examination under the Confrontation Clause allows a defendant the opportunity to show bias and thus expose the jury to facts from which jurors may appropriately draw inferences relating to witness reliability. *State v. Tran*, 712 N.W.2d 540, 551 (Minn. 2006). But the right to cross-examine witnesses may be limited as long as the jury is "presented with sufficient information from which to draw inferences as to witness reliability." *State v. Yang*, 774 N.W.2d 539, 552 (Minn. 2009). Here, the defense elicited from L.G. that he was in custody at the time he testified, that he had an ongoing case, that he told his attorney about Alwan's admission, that he was hoping for some kind of benefit, and that his attorney was present in the courtroom. Thus, the defense had had ample opportunity to present sufficient information to the jury from which the jury could

draw inferences about L.G.'s reliability. *See id.* at 553 (concluding that no Confrontation Clause violation occurred when witnesses testified on cross-examination that they were allowed to plead guilty and receive less jail time in exchange for their testimony, but the district court did not allow questioning about the exact lengths of their sentences). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. Holliday*, 745 N.W.2d 556, 566 (Minn. 2008) (quotation omitted). We cannot conclude that, under these circumstances, plain error occurred affecting Alwan's substantial rights.

> ### III. *The district court appropriately exercised its discretion when it did not disqualify an alternate juror until after voir dire, when Alwan had used up all of his peremptory challenges.*

Alwan argues that the district court committed plain error by improperly interfering with the exercise of his peremptory challenges when it failed to timely remove an alternate juror who asserted that he could not fully understand the proceedings in English. After voir dire, one juror from the panel passed a note to the district court stating that English was his second language, and he was only understanding some of the proceedings. The district court privately interviewed that juror and retained the juror on the panel. At the beginning of trial the next day, the juror told the court that he had an interpreter when he went to court in the past and that when the judge started explaining more about this case, he did not fully understand. Defense counsel argued that the juror was one of two alternates and requested that the juror either continue in that capacity or that he be discharged. The juror remained seated for that day of trial. The next morning, however, when the district

court inquired how the juror was understanding the proceedings, he indicated he was having difficulty without an interpreter in this case. The district court released him for cause, and both attorneys agreed to proceed with a single alternate juror.

Alwan argues that because the juror was not excused until after trial began, he was effectively denied his right to select jurors from a full jury panel and was required to use his last peremptory challenge on another venire panelist. The Minnesota Rules of Criminal Procedure prescribe the use of peremptory challenges in jury trials. Minn. R. Crim. P. 26.02, subd. 6. In 1965, the United States Supreme Court indicated that the denial or impairment of the right to peremptory challenges amounts to reversible error, even without prejudice shown. *Swain v. Alabama*, 380 U.S. 202, 219, 85 S. Ct. 824, 835 (1965). But more recently, the Supreme Court has held that peremptory challenges are not constitutionally protected fundamental rights, so that they may be withheld without impairing the guarantee to an impartial jury and a fair trial. *Georgia v. McCollum*, 505 U.S. 42, 57 112 S. Ct. 2348, 2358 (1992). "The loss of a peremptory challenge does not automatically deprive a defendant of a fair trial or require the reversal of his conviction." *State v. Jackson*, 773 N.W.2d 111, 121 (Minn. 2009).

The ability to communicate in the English language is one of the qualifications for service on a jury. Minn. R. Gen. Pract. 808(b)(4). This court has held in a similar situation, when a juror stated that she had trouble understanding the proceedings in English, that the district court did not abuse its discretion by removing that juror and replacing her with an alternate. *State v. Berrios*, 788 N.W.2d 135, 140 (Minn. App. 2010). There was no indication that the alternate juror was biased. *Id*. at 141. Here, when the juror indicated

13

that he had difficulty understanding English, defense counsel observed that the juror was one of two alternates and suggested the possibility of the juror continuing in that capacity.[3] The next day, when the juror again stated that he had difficulty understanding the proceedings, the district court released the juror. This comports with the procedure approved in *Berrios*. *See id*. Further, there was no prejudice to Alwan because the juror who was removed was acting as one of two alternate jurors, who, if not replacing a principal juror, would be discharged when the jury retired to consider its verdict. *See* Minn. R. Crim. P. 26.02, subd. 9 (stating rules for alternate jurors). Because there is no showing of actual bias to support an improper restriction of peremptory challenges, and no prejudice from the removal of the juror as an alternate, the district court's exercise of discretion was appropriate, and no plain error occurred.

**Affirmed.**

---

[3] In light of Alwan's initial endorsement of retaining the juror as an alternate, the doctrine of invited error is instructive. "As a general rule a party cannot assert on appeal an error that he invited or that could have been prevented at the district court." *State v. Benton*, 858 N.W.2d 535, 540 (Minn. 2015) (quotation omitted).