**UNITED STATES of America, Plaintiff,**

v.

**Charles ACOSTA et al., Defendants.**

**No. CR–S–03–542–JCM(PAL).**

United States District Court,
D. Nevada.

Jan. 31, 2005.

---

Eric Johnson, Esq., Chief, Organized Crime Strike Force, Andrew Duncan, Esq., Office of the United States Attorney, Las Vegas, NV, for plaintiff.

Daniel J. Albregts, Esq., Las Vegas, NV, for defendant Charles Acosta.

Kim Kruglick, Esq., Mill Valley, CA, for defendant Robert Anello.

Paul Burglin, Esq., Mill Valley, CA, for defendant Robert Anello.

Mace J. Yampolsky, Esq., Las Vegas, NV, for defendant Robert Anello.

Randall J. Roske, Esq., Las Vegas, NV, for defendant Ron Arnone.

Michael Cristalli, Esq., Las Vegas, NV, for defendant Matthew Carlock.

Mitchell Posin, Esq., Las Vegas, NV, for defendant Jeffrey Carney.

James A. Bustamante, Esq., San Francisco, CA, for defendant Matt Camach.

Ross C. Goodman, Esq., Las Vegas, NV, for defendant Rodney Cox.

Thomas C. Naylor, Esq., Henderson, NV, for defendant Steve Eades.

John L. Duffy, Esq., Las Vegas, NV, for defendant Montgomery Elliott.

Anthony Montisano, Esq., Las Vegas, NV, for defendant Maurice Eunice.

Michael Harkness, Esq., San Diego, CA, for defendant Maurice Eunice.

T. Louis Palazzo, Esq., Las Vegas, NV, for defendant Raymond Foakes.

Michael Cardoza, Esq., Walnut Creek, CA, for defendant Shawn Frazer.

Peter S. Christiansen, Esq., Las Vegas, NV, for defendant James Hannigan.

Douglas L. Rappaport, Esq., San Francisco, CA, for defendant Wayne Hodges.

William B. Terry, Esq., Las Vegas, NV, for defendant Eiland Hogan.

Osvaldo E. Fumo, Esq., Las Vegas, NV, for defendant Michael Hurn.

Scott L Bindrup, Esq., Las Vegas, NV, for defendant Charlie Hyde.

Terrence M. Jackson, Esq., Las Vegas, NV, for defendant Patrick Kalabolas.

Karen A. Connolly, Esq., Las Vegas, NV, for defendant Edward Laigo.

Brian M. Fisher, Esq., Las Vegas, NV, for defendant Dale Leedom.

Harris B. Taback, Esq., San Francisco, CA, for defendant Jesse Mahon.

John J. Momot, Esq., Las Vegas, NV, for defendant Michael Mills.

Fred H. Atcheson, Esq., Reno, NV, for defendant Jeff Morales.

Michael Pancer, Esq., San Diego, CA, for defendant Steven Pearce.

Michael Kennedy, Esq, Las Vegas, NV, for defendant Sohn Regas.

David Z. Chesnoff, Esq., Las Vegas, NV, for defendant Calvin Schaefer.

Mario D. Valencia, Esq., Henderson, NV, for defendant Donald Smith.

Alan Caplan, Esq., San Francisco, CA, for defendant Michael Smullen.

John N. McNicholas, Esq., Las Vegas, NV, for defendant William Spearman.

Robert G. Lucherini, Esq., Las Vegas, NV, for defendant David Steely.

Leo P. Flangas, Esq., Las Vegas, NV, for defendant George Walters.

Brian F. Russo, Esq., Scottsdale, AZ, for defendant John Ward.

Charles E. Kelly, Esq., Las Vegas, NV, for defendant Brian Wendt.

Richard A. Wright, Esq., Karen C. Winckler, Esq., Las Vegas, NV, for defendant Brian Wolff.

Chad A. Bowers, Esq., Las Vegas, NV, for defendant Jeff Zarate.

Robert Murdock, Esq., Las Vegas, NV, for defendant Shawn Frazer.

Jai M. Gohel, Esq., San Francisco, CA, for defendant Shawn Frazer.

Robert M. Draskovich, Esq., Las Vegas, NV, for defendant Justin Harrah.

Travis E. Shetler, Esq., Las Vegas, NV, for defendant Keith Hixon.

Anthony Sgro, Esq., Las Vegas, NV, for defendant Ricky Jenks.

Andrew Fritz, Esq., Las Vegas, NV, for defendant Daniel LaJoices.

## ORDER AFFIRMING MAGISTRATE ORDER (# 561)

MAHAN, District Judge.

Before this court is the order of U.S. Magistrate Judge Leen (# 561) requiring government prosecutors to timely disclose before trial all evidence or information known that tends to negate the guilt of the accused or mitigate the offenses charged. Judge Leen's order further directs the government to make these disclosures no later than sixty (60) days before trial. The Office of the United States Attorney filed objections (# 590) to Section C and D of the order on September 19, 2004. Defendant Steven Pearce filed his reply (# 608) on October 6, 2004. The parties' arguments concerning Judge Leen's order raise two important questions of law reviewed de novo by this court. *See generally United States v. Cabaccang*, 332 F.3d 622 (9th Cir.2003). First, what is the scope of the government's duty to disclose exculpatory evidence before trial? Second, how are conflicts between the duty to disclose and the Jencks Act reconciled?

*Scope of Pre–Trial Duty to Disclose:*

"The prosecution's affirmative duty to disclose evidence favorable to a defendant can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with... *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." *Kyles v. Whitley*, 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In *Brady*, the Supreme Court held "suppression by the prosecution of evi-

dence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. 1194. "Favorable" evidence under *Brady* encompasses both exculpatory and impeachment evidence and evidence must be both favorable and material before disclosure is required. *United States v. Bagley*, 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

 All parties recognize material exculpatory evidence under *Brady* must be disclosed before trial, but the government urges *Brady's* materiality standard is the limit of the duty to disclose. This court cannot agree.

*Brady* and its progeny arise in a post-trial context. Specifically, these cases address after trial whether the failure to disclose favorable material evidence in violation of defendant's due process rights justifies a new trial. As *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), makes clear, only suppression of evidence that cumulatively rises to the level of "material" violates defendant's due process rights. *Brady's* concern whether a constitutional violation occurred after trial is a different question than whether *Brady* is the full extent of the prosecutor's duty to disclose pretrial. *Brady's* materiality standard for due process violations in a post-trial context should not be used to sanction any and all conduct that does not rise to a constitutional violation of defendant's due process rights because the United States Attorney is held to a higher standard.

The United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v.*

*United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

"This special status explains both the basis for the prosecution's broad duty of disclosure and our conclusion that not every violation of that duty necessarily establishes that the outcome was unjust. Thus, the term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called '*Brady* material'—although, strictly speaking, there is never a real '*Brady* violation' unless the non-disclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Though the Supreme Court in *Strickler* recognized the duty to disclose is broader than the narrower question whether failure to disclose violates the Constitution, the *Strickler* Court did not delineate the scope of that duty. Nevada, like many states, has adopted the ABA Standards for Criminal Justice to fill this void and Nevada Supreme Court Rule ("SCR") 179(4), derived from ABA Model Rule 3.8(d), defines the scope of the duty to disclose "the prosecutor in a criminal case shall...[m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense...." Nev.Sup.Ct.R. 179(4)(1986). This court has adopted the ABA standard within SCR 179(4) for pretrial disclosure through Local Rule IA 10–7(a).

*Government's objections*

The government argues this guideline of professional conduct, adopted as a local rule, should not be elevated to a standard of pre-trial procedure. (Government Opposition ("Opp'n") at 5.) Yet this court's local rules, regardless of origin or form,

regulate many aspects of pre-trial procedure and this court refuses to disregard them for that reason alone.

The government's opposition acknowledges federal prosecutors must follow the rules of professional conduct adopted by the district court, but contends these rules should not be construed "to supersede well-established Federal constitutional and statutory law, i.e., *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, and the Jencks Act, 18 U.S.C. § 3500." (Opp'n at 3.) The government supports this contention by citing *U.S. v. Coppa,* 267 F.3d 132 (2nd Cir.2001); *State v. Walter,* 2003 WL 352628 (Conn.Super.Ct.2003); and *In the Matter of Attorney C,* 47 P.3d 1167, 1171 (Colo.2002). These cases are not controlling authority for this court and this court is convinced the Ninth Circuit and Supreme Court consider the ABA standards as supplementing rather than superseding *Brady,* statutory law, and the Jencks Act.

As the Court in *Kyles v. Whitley* noted, "the rule in *Bagley* (and, hence, in *Brady* ) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate." *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555. This implies the ABA standards and *Brady* are not mutually exclusive. Rather, the ABA Standards offer a model for pretrial disclosures, a model adopted by Nevada and this court, while *Brady* and its progeny concern whether violation of the pretrial duty to disclose, defined in this court by SCR 179(4), rises to the level of a constitutional violation after trial has occurred.

One of the few courts within this circuit to consider the pretrial duty to disclose is *United States v. Sudikoff,* 36 F.Supp.2d 1196 (C.D.Cal.1999). In *Sudikoff,* District Judge Pregerson reasoned *Brady's* standard of materiality "is only appropriate,

and thus applicable, in the context of appellate review. Whether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed Brady material....This analysis obviously cannot be applied by a trial court facing a pretrial discovery request." *Sudikoff,* 36 F.Supp.2d. at 1198 (citations omitted). As *Sudikoff* recognizes, under *Bagley's* cumulative "materiality" standard it becomes extremely difficult if not impossible to discern before trial what combination of evidence will be deemed "material" after trial under *Brady.*

For this reason, the Ninth Circuit noted in *United States v. Van Brandy,* that "where doubt exists as to the usefulness of evidence, [the government] should resolve such doubts in favor of full disclosure, but its failure to do so must raise a reasonable possibility that it materially affected the verdict before it becomes significant." 726 F.2d 548, 552 (9th Cir.1984) (citations omitted). Simply because "material" failures to disclose exculpatory evidence violate due process does not mean only "material" disclosures are required.

Whether evidence is "useful," "favorable," or "tends to negate the guilt or mitigate the offense" are semantic distinctions without difference in a pretrial context. SCR 179(4)'s standard does not exceed *Brady* as the prosecution argues, but instead asks the same initial question as *Brady,* i.e. whether the evidence is favorable.

Because SCR 179(4) does not supersede *Brady's* constitutional concerns, this court does not exceed its authority in adopting it under Local Rule IA 10–7(a). (Opp'n at 14.) Federal Rule of Criminal Procedure ("Rule") 57(a) provides clear authority for district courts to make rules governing

pretrial criminal procedure so long as the Local Rules do not conflict with federal law. As the Ninth Circuit noted in *United States v. Richter*, "[i]t is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice." 488 F.2d 170, 173 (9th Cir.1973).

The government next contends Magistrate Leen cannot possible expect it to now search "for evidence that merely 'tends' to negate or mitigate, without regard to any materiality." (Opp'n at 6.) Despite the government's consternation, this burden is already imposed by *Brady*. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555. As noted, "favorable" evidence and the "negate or mitigate" standards are essentially identical. If anything, SCR 179(4) may be easier for prosecutors to satisfy because it removes the secondary analysis whether favorable evidence is cumulatively "material."

 Finally, the government curiously asserts "there is no requirement that any form of *Brady* material, including affirmatively exculpatory information, be produced before trial unless pretrial disclosure is necessary to make effective use of the information" (Opp'n at 10.) This appears to disregard the Ninth Circuit's clear pronouncement that "[u]nder *Brady*, the government must disclose *before trial* 'evidence that is material either to guilt or punishment which is favorable to the accused.'" *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir.1998)(quoting *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir.1995)).

### *Conflict between Brady and Jencks Act*

 The strongest concern raised by the government regards the inevitable collision between the pretrial duty to disclosure and the Jencks Act. (Opp'n at 9.) As the government notes, the purpose of the Jencks Act is to "provide for the production of statements, reports, transcriptions or recordings, as described in the bill, after the government witness has testified against the defendant on direct examination in open court, and to prevent disclosure before such witness has testified." (Opp'n at 11 (quoting S.Rep.No. 85–981, 85th Cong.1st Sess. (1957), at 3, 1957 WL 5113.))

To prevent disclosure of witness statements before testifying, subsection (a) of the Jencks Act provides "[i]n any criminal prosecution...no statement or report in the possession of the United States which was made by a Government witness or prospective government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

The obvious example of this conflict occurs when a government witness' statement includes favorable evidence for the defense. The government raises this inevitable conflict to argue the "negate or mitigate" standard should be stricken because it would render "invalid a key provision of the Jencks Act, which requires the production of a witness' statements following testimony by that witness." (Opp'n at 9.)

 However, it is important to recognize this collision between Jencks and the pretrial duty to disclose occurs whether the standard is SCR 179(4) or *Brady's* "materiality" standard. It is also important to recognize that although other circuits largely disagree, the Ninth Circuit has clearly held the Jencks Act controls

over *Brady.* *See United States v. Shifflett,* 798 F.Supp. 354, 356 n. 5 (W.D.Va.1992) "*Brady* does not overcome the strictures of the Jencks Act. When the defense seeks evidence which qualifies as both Jencks Act and *Brady* material, the Jencks Act standards control." *United States v. Jones,* 612 F.2d 453, 455 (9th Cir.1979).

Regardless of the wisdom behind suppressing the constitutional rights of defendants with a rule of evidence and procedure only, not "an interpretation of the Constitution," 2A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Criminal 3d* § 436 (3d ed.2000), the Ninth Circuit holding of *Jones* must be followed. Because the "negate or mitigate" standard would no doubt be encapsulated within the holding of *Jones,* the government's fear of the pretrial duty rendering a large portion of the Jencks Act invalid is misguided.

Rather, what renders the Jencks Act inapplicable is Rule 26.2. "In 1980 Criminal Rule 26.2 became effective. It places in the Criminal Rules the substance of what had been the Jencks Act, but it also provides for production of the statements of defense witnesses at trial in essentially the same manner as the statute had provided with respect to the statements of government witnesses. Thus, the Jencks Act itself is no longer applicable, and the principles contained in it are discussed in connection with Rule 26.2."2A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure, Criminal 3d* § 417 (3d ed.2000); Fed.R.Crim.P. 26.2 advisory committee's note, 1979 addition.

Rule 26.2 does not include the strict language against pretrial discovery relied on by the government from subsection (a) of the Jencks Act. Rather, subdivision (g)(1) of Rule 26.2 recognizes witness statements may be disclosed before trial if required for preliminary hearings before a magistrate judge under Rule 5.1.

This does not mean the important concerns subsection (a) of the Jencks Act intended to guard against should be disregarded, namely the risk of "adverse consequences to both witnesses and other investigations." (Opp'n at 9.) Yet neither should the important concerns behind the prosecution's pretrial duty to disclose, namely the defendant and society's interest in a fair trial, be cast aside. Choosing one interest over the other, as in *Jones,* unavoidably produces "some situations in which late disclosure would emasculate the effects of *Brady* or other situations in which premature disclosure would unnecessarily encourage those dangers that militate against excessive discovery in criminal cases, e.g. potential for manufacture of evidence or bribing of witnesses." *Shifflett,* 798 F.Supp. at 356.

Though this collision may be unavoidable in some cases, this court doubts the risk is so dire it necessitates scrapping the pretrial duty to disclose under SCR 179(4) solely to prevent potential conflicts that may be more imagined than real.

First, the Jencks Act and Rule 26.2 primarily guard against disclosure of actual statements by witnesses. In most cases, the pretrial duty to disclose may be satisfied not through production of the actual statement but rather by production of some synopsis of the exculpatory or impeachment evidence contained within the statement without production of the actual statement.

Second, the prosecution calls witnesses to offer inculpatory evidence. If a witness' testimony includes exculpatory or impeachment evidence, then that witness' usefulness to the prosecution is limited. Subsection (a) was intended to protect against the danger of improper witness influence. This danger is substantially lessened when witness testimony includes

exculpatory evidence or the witness is readily impeached.

The government admits the dangers subsection (a) protects against are often not present when it informs the court the usual practice is to produce exculpatory or impeachment evidence five days before trial. Instead, the government repeatedly raises not the dangers subsection (a) intends to avoid, but instead the burden upon the prosecution itself. This burden should not be the prosecution's justification for avoiding its duty under SCR 179(4), nor its constitutional obligations under *Brady*.

In those rare cases where SCR 179(4), *Brady*,, Rule 26.2, and the Jencks Act are implicated, the court maintains an ideal mechanism to resolve conflict in the expertise and discretion of its magistrate judges. Magistrate judges are intimately familiar with the demands and dangers of discovery, and the different concerns embodied by SCR 179(4), *Brady*, Rule 26.2, and the Jencks Act.

Should the government realize a potential witness statement contains exculpatory or impeachment evidence, then the government may either voluntarily produce the evidence as it often does now, or the government may go before a magistrate judge to resolve the dilemma. The magistrate judge may then fashion a protective order to guard against whatever concerns the government raises under the Jencks Act and Rule 26.2. At the same time, the magistrate judge may provide the defense with a summary of the SCR 179(4) and *Brady* evidence or some other solution to satisfy the underlying interest in disclosure. In *Jones*, the Ninth Circuit contemplates such *in camera* review as a sound approach to resolving both *Brady* and Jencks Act concerns. *See Jones*, 612 F.2d at 456.

This mechanism guards against the potential dangers, yet satisfies the important considerations under this court's pretrial duty to disclose. Such compromise also complies with the Jencks Act and Rule 26.2, yet avoids emasculating the important duty of pretrial disclosure. If the magistrate judge concludes no solution is possible, then the Jencks Act clearly controls and the witness statement cannot be produced until the witness testifies on direct examination.

Given *Brady* protects the constitutional rights of defendants, whereas the Jencks Act is a rule of evidence and procedure, these potential conflicts should be minimized to provide the greatest protection for defendant's constitutional rights while still guarding against the dangers the Jencks Act was originally concerned with.

### Timing

The final procedural concern the government raises is the 60–day timeline set by Magistrate Judge Leen. Neither *Brady* and its progeny nor SCR 179(4) establish a specific schedule for disclosure. Here, Magistrate Judge Leen considered the substantial amount of evidence within the case and that the prosecution was unwilling to sever defendants to facilitate trial. Since this determination, the government has submitted to the court its proposed plan severing defendants into smaller groups of seven for trial. (# 618) Accordingly, the 60–day order for pre-trial disclosure is moot and should be reset in the discretion of Magistrate Judge Leen taking account of the important considerations her order lays out.

Therefore, upon review of the magistrate judge's order and the parties' submissions, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order (# 561) of United States Magistrate Judge Leen, be, and the same hereby is, AFFIRMED in its entirety subject to the above modifications.

## ORDER OF UNITED STATES MAGISTRATE JUDGE

LEEN, United States Magistrate Judge.

This matter is before the court on defendant Steven Pearce's Motion for Disclosure of Proffer Information (# 301) and multiple joinders (# 302, # 306, # 312, # 313, # 314, # 316, # 317, # 318, # 320, # 322, # 325, # 328, # 330, # 331, # 332, # 333, # 334, # 335, # 339, # 342, # 346, # 348, # 351, # 365, # 366, # 368, # 373, # 378, # 403). The court has considered the motion, the government's Response (# 403), the arguments of counsel at a hearing conducted July 12, 2004, and defendant Pearce's Additional Authority (# 498) filed in open court at the hearing.

## BACKGROUND

The indictment in this case was returned December 2, 2003, (# 1) and charges forty-two defendants with violence in aid of racketeering under 18 U.S.C. § 1959, use of a firearm in commission of a felony, under 18 U.S.C. § 924(c), and aiding and abetting under 18 U.S.C. § 2. The indictment also contains forfeiture allegations. The indictment arises out of events which occurred at the Twentieth Annual Laughlin River Run in Laughlin, Nevada, between April 25 and April 28, 2002. It alleges that the Hell's Angels Motorcycle Club ("HAMC") is an outlaw motorcycle gang engaged in racketeering activity whose members and associates engage in acts of violence and narcotics distribution. The HAMC allegedly accomplishes its objectives through creating a climate of fear by assaulting members of rival motorcycle clubs, particularly the Mongols. It is alleged that there was a long and violent history between the HAMC and the Mongols which included a series of occurrences in 2001 in California and Nevada preceding the April 2002 annual Laughlin River Run. Several "minor events" between the HAMC and the Mongols during the River Run preceded the April 27, 2002, incident which resulted in a violent confrontation in Rosa's Cantina at Harrah's Laughlin Casino between the two clubs.

The government alleges that in the early morning hours of April 27, 2002, a large group of Mongols were socializing and gambling inside Harrah's Laughlin Casino and that a small group of Hells Angels members and prospects were in the casino, socializing in one of Harrah's bars, Rosa's Cantina. At approximately 2:00 a.m., HAMC members at the Flamingo Laughlin received a telephone call from HAMC members at Rosa's Cantina requesting support for a violent confrontation with the Mongols. As a result, several groups of HAMC members left the Flamingo Laughlin on their motorcycles and headed toward Harrah's. Las Vegas Metropolitan Police Department ("LVMPD") gang detectives followed one large group of HAMC members, and observed HAMC members from other locations in Laughlin converging on Harrah's. A LVMPD sergeant pulled into the Harrah's valet area, concerned about a confrontation between the two groups. His marked police car was surrounded by HAMC members who ignored his police lights, left their motorcycles with the keys in the ignitions, and ran or walked into the hotel to the area of Rosa's Cantina. A group of HAMC members confronted a group of Mongols and after "a short discussion" one of the HAMC members, Raymond Foakes, allegedly kicked one of the Mongols members. Bedlam ensued. Weapons were drawn by both groups. Members of both groups sustained multiple injuries, and three men were killed inside the casino area.

Law enforcement closed the casino and detained seventy-eight HAMC members and associates and forty-two Mongols members and their associates. A federal

indictment was not returned until December 3, 2003. The indictment charges only members and associates of the HAMC.

### Pearce's Proffer Motion

In the current motion, Steven Pearce ("Pearce") seeks disclosure of proffer information provided by informants and cooperating witnesses in this case which includes: initial discussions between the U.S. Attorney's Office and the cooperating individual and the cooperating individual's counsel; the proffer itself; discussions between the U.S. Attorney's Office and case agent regarding their respective opinions as to the completeness and truthfulness of the proffer; discussions regarding the benefits to be offered to the cooperator; and the actual benefits ultimately conferred. Pearce anticipates that some of the forty-two defendants may plead guilty and provide information to the government to obtain a sentence reduction. He also believes the government may have obtained pre-indictment plea agreements from a number of individuals not charged in this case. He argues that if the government intends to use these witnesses, all of the information he seeks is *Brady* material because it impacts the cooperators' ultimate credibility.

The government's response indicates that the government will produce some of the information requested "in a timely fashion." Specifically, the government has agreed to produce the terms of all agreements and inducements with testifying cooperating witnesses or defendants; information that a testifying cooperating witness has provided conflicting or untruthful information, has failed a polygraph or has otherwise breached the terms of his or her plea agreement with the government; the potential range of a "substantial assistance" sentencing guideline departure based on the anticipated cooperation of the testifying witness, if that range was communicated to the co-operating witness and/or the witness's attorney; the criminal record of the testifying cooperating witness material to credibility; monetary payments made by the government to the testifying cooperating witness; and prior statements of the testifying cooperating witnesses. The government opposes production of materials related to initial discussions between the assigned AUSAs and cooperators' counsel; the actual proffer of the cooperator, and statements of counsel; and the initial discussions between the AUSAs and the case agent regarding opinions as to the completeness and truthfulness of the proffer.

### DISCUSSION

Pearce describes his understanding of the proffer system, acknowledges that the proffer system *may* be necessary to our system of justice, but argues it can encourage perjury because government counsel and the case agent sometime suggest the cooperator is withholding information and further suggest what information the cooperator could provide if he or she was being completely candid. He seems to suggest that because, at times, the cooperator is told by his own lawyer what the government expects to hear when he is debriefed in a proffer session that the jury should be made aware of this information. He reasons the jury may determine that the cooperator changed his story during the proffer process to "curry favor with the government and earn more cooperation points." (Motion (# 301), p. 3.) Additionally, he argues that while cooperators are frequently given plea agreements which indicate the government does not commit to a specific amount of downward departure, the "cooperator often has an expectation of the amount the government may recommend." *Id.* If the AUSA and cooperator's counsel talked about the possible range for downward departure,

Pearce argues the defense and jury should know this because (1) the *amount* of downward departure versus the *fact* of downward departure depends on the quality of the information provided and (2) if the range was discussed with the cooperator's counsel but not mentioned in the plea agreement, it "may affect the cooperator's state of mind." *Id.* at 4. Pearce also asserts that any variance in a statement of an informant or cooperating witness is *Brady* material, and that the content of negotiations regarding the amount of downward departure is also *Brady* material.

Pearce relies heavily on a decision granting a motion for discovery by District Judge Pregerson in *United States v. Sudikoff,* 36 F.Supp.2d 1196 (C.D.Cal.1999). There, Judge Pregerson held that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires pretrial disclosure of exculpatory information that is either admissible or reasonably likely to lead to admissible evidence. Finding that the normal materiality standard associated with *Brady* should not apply to pretrial discovery of *Brady* material, he ordered the government to disclose:

> all proffers by any witnesses receiving any benefit, whether immunity or leniency, in return for testimony. Included in this category are any proffers made by lawyers for such witnesses. By "proffers" the Court refers to statements that reflect an indication of possible testimony, whether or not it seems likely that the witness would actually so testify. In addition, the government must disclose any notes or documents created by the government that reflect this information. Further, the government must disclose any material that indicates any variations in the witness's proffered testimony.
>
> The government must also disclose to the defendants any information in its possession that reveals the negotiation process by which the immunity agreement was reached. This includes materials authored by a witness, a witness's lawyer, or the government.

36 F.Supp.2d at 1206.

Judge Pregerson's order in *Sudikoff* thoughtfully discussed *Brady* and its progeny. He disagreed with the "materiality" standard usually associated with *Brady* for pretrial discovery purposes, and found it should not be applied to pretrial discovery of exculpatory materials. He pointed out how the prosecutor's *Brady* obligations are usually examined in the context of appellate review where the failure to disclose evidence is considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 1198, *citing, Ortiz v. Stewart,* 149 F.3d 923, 935 (9th Cir.1998), *quoting, United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). He reasoned that just because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper. *Id.* at 1199. On appellate review of a conviction, the *Brady* materiality standard examines whether a defendant was prejudiced from admittedly improper conduct. However, the absence of prejudice to the defendant does not condone the prosecutor's suppression of exculpatory evidence. Judge Pregerson, therefore, determined that the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. *Id.* He also found that if doubt exists, it should be resolved in favor of the defendant and full disclosure made. *Id.* He, therefore, held that the government was obligated to disclose all evidence relating to guilt or punishment

which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence. *Id.* at 1199–1200.

Judge Pregerson found that the proffers of the government witnesses and other materials that would show how the immunity agreement in that case was reached was information that "might reasonably be considered favorable to the defendant's case," and likely to lead to admissible evidence. *Id.* at 1201. He also found "that any variations in an accomplice witness's proposed testimony could be considered favorable to the defense and the existence of such differences should be disclosed under *Brady.*" *Id.* at 1202. He held that witness proffers and other information of this ilk fall within the scope of *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), which obligates prosecutors "to turn over to the defense in discovery all material information casting a shadow on a government witness's credibility." *Id.* at 1203, *quoting, United States v. Bernal–Obeso,* 989 F.2d 331, 334 (9th Cir.1993), *citing, United States v. Shaffer,* 789 F.2d 682, 689 (9th Cir.1986). He recognized that *Giglio* concerned only the suppression of the existence of a leniency agreement, but found that "information that illuminates the process leading up to the agreement may 'cast a shadow' on an accomplice witness's credibility in a manner that disclosure of only the agreement itself would not accomplish." *Id.* He concluded that information that reveals the process by which a leniency agreement was reached "is relevant to the witness's credibility because it reveals the witness's motive to testify against the defendant" and is, therefore, "discoverable under *Brady* and *Giglio.*" *Id.*

The government argues that the discovery it opposes producing is not *Brady* information because it is not material, i.e.,

evidence for which "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" citing, *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The government points out that the Supreme Court has repeatedly held that *Brady* is not a discovery rule, and that a prosecutor only violates his constitutional duty to disclose if "his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Bagley,* 473 U.S. at 676, 105 S.Ct. 3375, *quoting, United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The government characterizes Judge Pregerson's ruling in *Sudikoff* that the materiality standard should not be applied in the context of pretrial discovery as "flawed." The government argues that it is impossible to reconcile *Sudikoff* with the Supreme Court's decisions holding that *Brady* does not create a constitutional right to additional discovery in criminal cases. The government also argues it is impossible to reconcile *Sudikoff's* pretrial *Brady* standard with the Supreme Court's unambiguous holdings that no constitutional violation occurs unless the prosecutor withholds evidence material to guilt or punishment, and that "materiality" means evidence for which there is a reasonable probability that had it been disclosed, a different verdict would have resulted.

The government also argues that the Supreme Court expressly rejected the "reasonably likely to lead to admissible evidence" standard in *Wood v. Bartholomew,* 516 U.S. 1, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995). In *Wood,* the government failed to disclose the results of a polygraph examination of a key witness. The Ninth Circuit reversed the district court's denial of habeas relief for this failure, finding that the polygraph results may have had an adverse effect on pretrial preparation

by the defense. The Supreme Court reversed, finding the Ninth Circuit had misapplied its "*Brady* jurisprudence." The Supreme Court found the Ninth Circuit's conclusion that disclosure of the polygraph results might have lead the defendant's counsel to conduct additional discovery that might lead to admissible evidence was "mere speculation, in violation of the standards we have established." 516 U.S. at 5, 116 S.Ct. 7. Examining the record below, including the testimony of the defendant's trial counsel, the Supreme Court found it was not "reasonably likely" that disclosure of inadmissible polygraph results would have resulted in a different outcome at trial. *Id.* at 8, 116 S.Ct. 7.

### ANALYSIS

#### A. The Prosecutor's *Brady* and *Giglio* Duties

■ The Supreme Court has clearly held that defendants have no constitutional right to discovery in criminal proceedings. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). In *Brady*, the Supreme Court held that the government's obligation to disclose favorable evidence is limited to evidence that is material to the defendant's guilt or punishment. 373 U.S. at 87, 83 S.Ct. 1194. In *Bagley*, a plurality of the Supreme Court rejected the Ninth Circuit's "automatic reversal" for nondisclosure of impeachment evidence and remanded the case to determine whether the disclosure of witness compensation was reasonably probable to have produced a different result. 473 U.S. at 684, 105 S.Ct. 3375. *Bagley* held that evidence is material if there is a reasonable probability the disclosure of the evidence would have changed the outcome of the proceeding. *Id.* at 682, 105 S.Ct. 3375.

In *Kyles v. Whitley*, the Supreme Court explained that the materiality standard examines whether, in the absence of the suppressed evidence, the defendant "re-ceived a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Kyles was charged with capital murder. He filed a lengthy pretrial discovery motion seeking exculpatory and impeachment evidence. The prosecution responded that it had no exculpatory evidence of any nature despite knowing about a number of inconsistent statements made by a key witness, variations in the eye witness accounts and identifications, evidence linking the witness to other crimes including an unrelated murder, and other documents. At the first trial, which resulted in a hung jury, the State primarily relied on eye witness testimony. Kyles maintained his innocence, called witnesses, supplied an alibi, and defended the case by claiming he had been framed by the witness who planted evidence in his apartment and trash to divert suspicion away from the witness. The Supreme Court found, "Because the State withheld evidence, its case was much stronger, and the defense case much weaker, than the full facts would have suggested." *Id.* at 429, 115 S.Ct. 1555. After the mistrial, the key witness again changed important elements of his story, but the prosecutor still failed to turn over his prior inconsistent statements. Kyles was convicted of first degree murder and sentenced to death.

On habeas review, the Supreme Court followed "the established rule that the state's obligation under *Brady v. Maryland* ... to disclose evidence favorable to the defense, turns on the cumulative effect of all such evidence suppressed by the government" and held that "the prosecutor remains responsible for gauging that effect regardless of any failure by the police to bring favorable evidence to the prosecutor's attention." *Id.* at 421, 115 S.Ct. 1555 (citation omitted).

The *Kyles* decision comprehensively discussed *Bagley*, holding constitutional error occurs for undisclosed evidence only if the evidence was material, and exhaustively explained the four aspects of materiality. First, a reasonable probability of a different result is shown when the government's suppression of evidence undermines confidence in the outcome of the trial. Second, a *Brady* violation is shown when "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 115 S.Ct. 1555. Third, once a reviewing court, applying *Bagley*, has found constitutional error, there is no need for further harmless error review. Fourth and finally, whether suppressed evidence is material is "considered collectively, not item by item." *Id.* at 436, 115 S.Ct. 1555. As the court explained:

> We have never held that the Constitution demands an open file policy (however such a policy might work out in practice), and the rule in *Bagley* (and, hence, in *Brady* ) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.

*Id.* (citations omitted).

*Kyles* also recognized that the prosecution has the responsibility "to make judgment calls about what would count as favorable evidence" and that "the character of a piece of evidence as favorable will often turn on the context of the existing or potential evidentiary record." *Id.* at 439, 115 S.Ct. 1555. The prosecutor is a representative of the government "whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Id., quoting, Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (internal quotations omitted). Therefore, the prudent prosecutor will resolve doubtful questions in favor of disclosure.

Similarly, in *Strickler v. Greene,* the Supreme Court explained:

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. __

527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

The Ninth Circuit has considered a series of cases involving the government's failure to turn over potentially exculpatory materials in pretrial discovery. In *United States v. Ciccone,* 219 F.3d 1078 (9th Cir. 2000), the Ninth Circuit was troubled by the government's failure to disclose a presentence report of a "co-schemer" who testified at trial. The report revealed the witness had been arrested several times, had a felony conviction for wire fraud, and a history of alcohol use. However, the Ninth Circuit concluded that the failure to disclose "was not sufficiently prejudicial to warrant a new trial both because the evidence against Ciccone was overwhelming and he vigorously cross-examined Miller." 219 F.3d at 1086. The witness admitted on cross-examination that he had been previously convicted of wire fraud, told the jurors about his plea agreement with the government, and admitted he suffered from alcoholism and had an impaired memory. *Id.* In *United States v. Henke,* the Ninth Circuit held that the trial court did not err by failing to conduct an *in camera* review of the government's notes from interviews with a key witness to ensure the notes did not contain exculpatory *Brady* material, finding that the defendants had made no showing that they might discover something exculpatory or impeaching, and had, therefore, not triggered the district court's obligation to re-

view the privileged notes *in camera*. 222 F.3d 633, 642 (9th Cir.2000).

 Payments to witnesses are *Brady* material. *Bagley v. Lumpkin*, 798 F.2d 1297, 1302 (9th Cir.1986). Cooperation agreements are *Brady* material. *United States v. Kojayan*, 8 F.3d 1315, 1322 (9th Cir.1993). Government information criticizing the integrity of the confidential informant are *Brady* materials. *United States v. Brumel–Alvarez*, 991 F.2d 1452, 1458 (9th Cir.1992). A prosecutor's interview notes of a government witness constitute *Brady* material to the extent they contain evidence of conflicting statements by the witness. *United States v. Service Deli, Inc.*, 151 F.3d 938, 942–43 (9th Cir. 1998). Rough interview notes of federal agents ordinarily need not be disclosed pursuant to the Jencks Act, *United States v. Alvarez*, 86 F.3d 901, 904 n. 2 (9th Cir.1996), but must be preserved, *United States v. Durham*, 941 F.2d 858, 860–61 (9th Cir.1991). However, although rough notes are not ordinarily discoverable under Jencks, they "must be disclosed pursuant to *Brady* if they contain material and exculpatory information." *Alvarez*, 86 F.3d at 904 n. 2.

 The Ninth Circuit has also held that generally, disclosure of *Brady* material is to occur before trial, *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir.1998), and the disclosure must be made at a time when it would be of value to the accused, *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir.1991). However, it is also clear that the court lacks authority to force the government to produce Jencks Act statements before the witness testifies, *United States v. Mills*, 641 F.2d 785, 789–90 (9th Cir.), *cert. denied*, 454 U.S. 902, 102 S.Ct. 409, 70 L.Ed.2d 221 (1981), and that an order requiring early disclosure is unenforceable, *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir.1986), *cert.*

*denied*, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987).

*Brady* and its progeny are based on a defendant's due process rights to a fair trial. The Supreme Court has never reversed a conviction for a *Brady* violation unless it has found that the government's failure to disclose evidence denied the defendant a fair trial. Judge Pregerson pointed out in *Sudikoff* that *Brady* emphasized the importance of ensuring that criminal trials are fair and that the proceedings comport with standards of justice:

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated .unfairly.... A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant.

*Brady*, 373 U.S. at 87–88, 83 S.Ct. 1194.

The Supreme Court and Ninth Circuit have held prosecutors must turn over material exculpatory evidence in pretrial discovery, not all exculpatory evidence however insignificant. *Kyles'* articulation of the four prong test for determining materiality persuades the court that the Supreme Court would reject the position taken by Pearce, supported by *Sudikoff*, that all exculpatory evidence and information that might lead to the discovery of admissible evidence is subject to mandatory pretrial disclosure under *Brady* and *Giglio*. Judge Pregerson's decision in *Sudikoff* is a significant departure from the Supreme Court's articulation of the prosecutor's constitutional *Brady* obligations.

 The government has agreed to timely produce the terms of all agreements and inducements with testifying cooperating witnesses or defendants; information

that a testifying cooperating witness has provided conflicting or untruthful information, has failed a polygraph, or has otherwise breached the terms of his or her plea agreement with the government; the potential range of a "substantial assistance" sentencing guideline departure based on the anticipated cooperation of the testifying witness, if that range was communicated to the cooperating witness and/or the witness's attorney; the criminal record of the testifying cooperating witness material to credibility; monetary payments made by the government to the testifying cooperating witness; and prior statements of the testifying cooperating witness. However, the government opposes producing materials related to initial discussions between the assigned AUSAs and the cooperators' counsel; the actual proffer of the cooperator, and statements of counsel; and the initial discussions between the AUSAs and the case agent regarding opinions as to the completeness and truthfulness of the proffer. The court agrees that *Brady* and its progeny do not create a constitutional duty requiring the prosecutor to disclose these materials in pretrial discovery unless the information is material. Pearce has not shown that the information he seeks in pretrial discovery is exculpatory or impeaching, only that he suspects it may be, or will lead to the discovery of admissible evidence.

Prosecutors are required to make the initial determination of whether the pretrial discovery the defendant requests is material. The prosecutor's responsibility to make judgment calls about what information constitutes *Brady* and *Giglio* material may cause defense counsel some angst. However, the prosecutor's duty to determine whether information in its possession requires pretrial disclosure is no different than the duty imposed on counsel for litigants in both civil and criminal litigation to exercise their professional judgment in making discovery disclosures required by the rules of civil and criminal procedure. The prosecutor who does not err in favor of disclosure runs the risk of reversal.

The government has agreed to turn over a substantial amount of information concerning agreements reached with cooperating witnesses. Government counsel have declined to produce specified categories of information relying on *Brady's* materiality standard for pretrial disclosure purposes. The issue for the court to determine is, therefore, whether the information the government objects to producing is *Brady* material, and what standard the court should employ in determining whether pretrial disclosure is required.

The government objects to producing materials concerning the initial discussions between the cooperator and his or her counsel with the government. Pearce argues these should be recognized as *Brady* materials because the proffer process shapes, influences, and forms the testimony of the cooperator before the first debriefing occurs, and that traditionally all the defense receives is the finished product, or proffer. The court agrees that if the cooperator makes inconsistent statements during the proffer process, those inconsistent statements must be regarded as exculpatory *Brady* material inasmuch as they impeach the credibility of the cooperator. It does not follow, however, that all of the notes, memoranda, and mental impressions of the participants are necessarily *Brady* material. Just as defense counsel may have a paralegal or investigator interview a potential witness and ask only outline questions, prosecutors and federal agents may make preliminary inquiries that do not illicit the details the formal proffer eventually does. Less detailed prior statements by the cooperator or counsel about what information the cooperator can offer are not necessarily, or even usually, prior inconsistent statements.

Nor are less detailed general statements necessarily an indication the prosecutors are attempting to shape or influence testimony or encourage perjury. The court will, therefore, not order that all materials related to the initial discussions between the cooperator and cooperator's counsel and the government be disclosed.

Next, the government opposes producing the proffer of the cooperator and any statements of counsel. Government counsel does not articulate a specific objection to producing this material other than a general criticism of Judge Pregerson's analysis in *Sudikoff*, and argument that *Brady* is not a rule of discovery, but a due process requirement which imposes a constitutional duty of disclosure only if the discovery is material, i.e., only if the prosecution's failure to disclose the material creates a "reasonable probability" of a different outcome at trial. On the one hand, the Jencks Act provides that the government, on motion of the defendant, must disclose any statement or report of a government witness in the government's possession after that witness has testified on direct examination at trial. 18 U.S.C. § 3500(a), (b). The Ninth Circuit has held that trial courts lack authority to force the government to produce Jencks Act statements before the witness testifies, *United States v. Mills*, 641 F.2d 785, 789–90 (9th Cir. 1981), and that an order requiring earlier disclosure is unenforceable, *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986). On the other hand, *Brady* requires *pretrial* disclosure of exculpatory information in time for it to be a value to the accused. *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir.1998); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir.1991). If the government intends to rely on the proffers of cooperators, it can only be because government counsel regard the proffers as inculpatory rather than exculpatory evidence. The responsibility for determining whether the proffers of the coopera-

tors and statements of their counsel are covered by the Jencks Act, and, therefore, not subject to disclosure until after the witness testifies, or, in the alternative, are *Brady* materials is the responsibility of the prosecutor to gauge. The prudent prosecutor will err in favor of disclosure. The court will not, however, order the prosecutors to produce the proffers and any statements of counsel in pretrial disclosure, fully expecting the prosecutors will make the judgment call *Brady* requires and err in favor of disclosure.

Finally, the government objects to producing materials related to the initial discussions between the AUSAs prosecuting this case and the case agent concerning the completeness and truthfulness of the proffer. Again, whether these materials are protected from disclosure under the Jencks Act, or exculpatory materials the prosecutor is obligated to produce pretrial pursuant to *Brady*, is a judgment call the prosecutors are obligated to make.

## B. The Defendant's Confrontation Rights

At the hearing, Pearce offered the Ninth Circuit's recent decision in *Murdoch v. Castro*, 365 F.3d 699 (9th Cir.2004), as additional support for his proffer motion. In *Murdoch*, the Ninth Circuit held that the trial court's failure to turn over an attorney-client privileged letter of a prosecution witness to his attorney violated the defendant's Sixth Amendment confrontation rights. The prosecution witness was an accomplice in a murder and robbery case who initially denied any involvement when questioned by police, but later recanted, admitted his own involvement in the robbery, and identified Murdoch as one of his accomplices. He was tried and convicted of first degree murder and sentenced to twenty-five years to life. At his sentencing, the sentencing judge suggest-

ed that his sentence might be subsequently reduced if he cooperated and testified against Murdoch. In the words of the Ninth Circuit, he "took the hint and agreed to testify against Murdoch in return for a reduction of his conviction to voluntarily manslaughter with a sentence of twelve years." 365 F.3d at 701. Prior to opening statements, the prosecutor informed the court and defense counsel she had discovered the existence of a letter written by the witness, Dinardo, to his attorney in which he exonerated Murdoch and claimed his own statements to the contrary had been coerced by police. The witness' attorney had the letter and asserted the attorney-client privilege. The trial court took possession of the letter without allowing Murdoch's lawyer or the prosecutor to see it, read it, ruled the witness was entitled to the privilege, and returned the letter to his attorney, ordering that it be preserved for appeal. The Ninth Circuit vacated the district court's denial of Murdoch's habeas corpus petition and remanded the case to the district court, instructing it to obtain the letter and determine *in camera* whether, under the totality of the circumstances of the case, the denial of access to the letter resulted in an unconstitutional denial of Murdoch's Sixth Amendment right to confront witnesses.

The court is not persuaded, however, that *Murdoch* mandates pretrial disclosure of the information Pearce seeks. The Sixth Amendment does not guarantee that a defendant have all material he seeks to impeach a witness. It only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam). Generally, that right is satisfied when the defendant has a full and fair opportunity to probe any inconsistencies in the witnesses' statements. *Id.* at 22, 106 S.Ct. 292.

## C. The Prosecutor's Special Responsibilities

Notwithstanding the constitutional duties imposed on prosecutors by *Brady* and its progeny, the prosecutor has special professional responsibilities. The ABA Standards for Criminal Justice and the Nevada Rules of Professional Conduct outline those special responsibilities. Local Rule IA 10–7 requires that an attorney admitted to practice in this district "shall adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as may be modified by this court." Local R. IA 10–7(a). The Nevada Supreme Court has adopted the Model Rules of Professional Conduct as adopted by the House of Delegates of the American Bar Association on August 2, 1983, with certain amendments. *See* Nev. Sup.Ct. R. 150. The Nevada Rules of Professional Conduct are set out in Supreme Court Rules ("SCR") 150 through 203.5. SCR 179 governs the special responsibilities of a prosecutor and provides in part:

> The prosecutor in a criminal case shall: 4. Make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal ....

Nev. Sup.Ct. R. 179(4) (1986).

Thus, prosecutors in this district and elsewhere are obligated to timely disclose to the defense evidence or information known to the prosecutor that tends to negate guilt of the accused or mitigate the offense, whether or not these disclosures

meet *Brady's* materiality standard. Independent of *Brady* and its progeny, the prosecution has the responsibility to timely disclose to the defense all evidence or information known to the prosecutor that tends to negate guilt or mitigate the offense. This includes disclosure of items under the control of the government. *Aichele,* 941 F.2d at 764. Moreover, the prosecutor is "deemed to have knowledge of and access to anything in the custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Zuno–Arce,* 44 F.3d 1420, 1427 (9th Cir.1995) (internal quotations omitted).

## D. Timing of Disclosures

This is a complex case involving voluminous discovery materials in audio, visual, and electronic format. Seventy-five thousand pages of documents have been produced in electronic format, and counsel for the parties indicate there may be an additional three hundred thousand pages of documents related to investigation of the Hells Angels and Mongols in other jurisdictions. Approximately thirty-eight video tapes and audio tapes have been produced in discovery, and more than four hundred video tapes from Harrah's security cameras are in the process of being copied, labeled, and indexed. Counsel for the parties have estimated that there are approximately five hundred witnesses to the melee which resulted in injuries and deaths that are cited in the indictment. The parties anticipate relying on a series of expert witnesses.

The government has agreed to produce some of the information Pearce requests "in a timely fashion," but has not specified what it regards as timely. Given the nature of the allegations, the number of defendants, the number of witnesses, and the government's position that all forty-two defendants should be tried together, the court finds these materials should be disclosed **no later than 60 days prior to trial.** The court fully expects the government counsel will produce *Brady* materials and disclosures required by SCR 179 in an orderly fashion well in advance of this cutoff to the extent practicable.

The court has now reminded the prosecutors of their professional obligations independent of *Brady* and its progeny, and trusts that government counsel will take those obligations seriously. Without suggesting government counsel have not, or will not, meet the special responsibilities imposed upon them by the Rules of Professional Conduct, the court will order pretrial disclosure of all evidence or information known to the prosecutors that tends to negate guilt or mitigate the offenses, whether or not that information is material in the sense that there is a reasonable probability if it is not turned over to the defense the result of the trial may be different, no later than 60 days prior to trial.

## *CONCLUSION*

Under *Brady* and its progeny, the government is only constitutionally obligated to disclose favorable evidence material to the defendant's guilt or punishment. Evidence is material if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. However, prosecutors have special duties imposed by the Rules of Professional Conduct which are independent of *Brady* and its progeny. The government has agreed to produce broad categories of discovery the defendant seeks, but opposes producing certain information, arguing the requests do not meet *Brady's* materiality standard. While the court

agrees with government counsel's analysis that *Brady* and its progeny do not create a constitutional duty to disclose nonmaterial exculpatory evidence in its possession in pretrial discovery, the court will require the prosecutors to meet their obligations under the Rules of Professional Conduct. Given the complexity of this case, and the need for the orderly preparation for and conduct of the trial, the court will require the government to turn over evidence that tends to negate guilt or mitigate the offenses charged no later than 60 days before trial.

Having reviewed and considered the matter,

**IT IS ORDERED:**

1. Defendant Steven Pearce's Motion for Disclosure of Proffer Information (# 301) is GRANTED to the extent the prosecutor shall timely disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offenses charged, and DENIED in all other respects.

2. For purposes of this ruling, disclosures shall be made no later than January 28, 2005, unless, for good cause shown, the prosecutor obtains a protective order.